Counsel should submit a journal entry which conforms with this opinion within fifteen days.

**UNITED STATES v. HARMON.**

Civ. No. C–34–52.

United States District Court

D. Utah, Central Division.

Aug. 13, 1953.

George M. McMillan, Special Asst. U. S. Atty., Salt Lake City, Utah, for the plaintiff.

Louis H. Callister and Nathan J. Fullmer, Salt Lake City, Utah, for the defendant.

WALLACE, District Judge.

The plaintiff, the United States of America, brings this civil action to recover damages for alleged violations by the defendant, Paul L. Harmon, doing business as Paul L. Harmon Company, of price stabilization regulations issued pursuant to the Defense Production Act of 1950, as amended.[1]

The primary issue before the Court is whether or not the defendant violated the governing regulations in the charges he made for "preparing and conditioning" the new cars for delivery in certain sales by the defendant between March 15 and December 18, 1951.

Section 3 of General Ceiling Price Regulation, Supplementary Regulation 5,[2] effective March 2, 1951, provided that the ceiling delivered price for new automobiles at retail should be the sum of the following amounts:

(1) The manufacturer's suggested list price.

(2) A charge for extra, special or optional equipment requested in writing by the customer.

(3) Transportation costs.

(4) Federal excise taxes.

(5) State and local taxes.

(6) *The ceiling price established under the General Ceiling Price Regulation for preparing and conditioning the new automobile for delivery.*

(7) Any other service, requested in writing by the seller.

The defendant takes the position that inasmuch as concededly he only charged the amount for "preparing and conditioning" during the contested sales that he charged for "delivery and handling" during the base periods under SR 5 and under Ceiling Price Regulation 83,[3] which supplanted SR 5 on October 15, 1951, that under the express terms of the regulation the Government cannot now challenge the lawfulness of this amount.

The basis for the defendant's contention is found in CPR 83, Interpretation 2, issued June 5, 1952, which provides in part:

"If a dealer can establish that he made a charge for preparing and conditioning as established by his books of account or other records covering the period January 26 to February 24, 1951, he uses the first of the following methods to establish the amount of that charge:

\*　\*　\*　\*　\*　\*

"(2) If the charge does not appear in his invoices but it appears separately stated anywhere in his books of account or other records, that is the charge he will use under section 7." [i. e. section 7 of CPR 83]

Out of context, the just quoted portion of the Interpretation seems to support defendant's argument that any charge made by the dealer during the base period which at the time was designated as "preparing

---

1. 50 U.S.C.A.Appendix, § 2061 et seq.

2. Hereinafter referred to as SR 5.

3. Hereinafter referred to as CPR 83.

and conditioning", or a synonymous phrase, could also be charged under the regulation.[4]

However, after careful consideration the Court believes that such a construction is contrary to the clear import and intent of the regulation viewed as a whole.

■ The unmistakable force of the regulation is that only the actual charge made for services rendered in connection with preparation for delivery may be allowed.

As mentioned in paragraph (3) of Interpretation 2 of CPR 83, "the dealer will exclude in accordance with the provisions of section 7, [CPR 83] his charge for any services not 'actually rendered in preparing the new automobile for delivery'" and as indicated in paragraph (4) of this same Interpretation,

"In looking to his costs for preparing and conditioning the automobile for delivery, he must look only to the costs of those services that are directly related to preparing the automobile for delivery (as stated in section 7). For example, he may not include the cost of advertising, warehousing, periodical checkups, floor planning, or 'any other charge which represents an item not directly a part of the preparation for delivery' as a part of the cost he uses for measuring his charge."

The mere fact that the defendant can qualify under paragraph (2) of the Interpretation does not alter the fact that under the regulation new car dealers may only charge for "preparing and conditioning" that amount which directly relates to services rendered.

Although SR 5 was superseded by CPR 83 on October 15, 1951, the Court does not believe the new regulation brought about any change material to the point involved in suit. Concededly, SR 5 left undefined "preparing and conditioning" other than that such was the "ceiling price established under the General Ceiling Price Regulation". When CPR 83 came

into effect the Statement of Considerations included:

"1. The other elements of the ceiling price are the charges for transportation costs, if any; a charge for Federal excise taxes and State and local taxes, a charge for preparing and conditioning the new automobile for delivery, and a charge for any other service requested by the customer. *These charges are the same as those permitted by SR 5 to the General Ceiling Price Regulation and are, therefore, those which were in effect at the time of the issuance of this regulation.*" (Emphasis supplied)

Thus, a mere restatement of the existing law took place when in section 7 of CPR 83 it was said:

"The preparing and conditioning charge must be directly related to services actually rendered in preparing the new automobile for delivery. If no services are rendered you can make no charge for preparing and conditioning. The preparing and conditioning charge does not include advertising charges or any other charge which represent an item not directly a part of the preparation for delivery."

■ The defendant raises the additional point that the Government should not be permitted to bring this suit for judgment prior to the time the defendant has had an opportunity to exhaust his administrative remedy with an attack upon the validity of the regulation. This contention is without merit. The doctrine requiring that "all administrative remedies be exhausted before the Court will accept jurisdiction" has no application in the instant case. Congress has seen fit to allow an immediate review and attack upon the regulation's validity through the Emergency Court of Appeals; no other method of stay has been provided.[5]

■ Also, there is no logical ground to support defendant's argument that SR

---

4. Subject of course to the limitation found in CPR 83, effective October 15, 1951, that such charge was to not exceed 5% of the list price.

5. See 50 U.S.C.A.Appendix § 2108(e).

5 only controlled sales for cash. Obviously, as much damage to the economy could be wrought by unrestricted and uncontrolled sales on credit as by sales for cash. The accent is on *sales* and not on the manner of payment.

The Court hereby specifically finds:

1. This is a civil action brought to recover damages for violations by defendant of a price stabilization regulation issued pursuant to the Defense Production Act of 1950, as amended. The Court is vested with jurisdiction by virtue of 50 U.S.C.A. Appendix § 2109 and 28 U.S.C.A. § 1345.

2. The defendant is a citizen of the State of Utah and has his principal place of business within the territorial limits of the jurisdiction of this Court.

3. Acting pursuant to the Defense Production Act of 1950, as amended, Executive Order 10161, U.S.Code Cong. Service, 1950, p. 1638 (15 F.R. 6105) and Economic Stabilization General Order No. 2 (16 F.R. 738) the Director of Price Stabilization issued SR 5 (16 F.R. 1769, et seq.) This regulation became effective March 2, 1951, and was in force and effect through October 14, 1951.

4. Acting pursuant to the authority mentioned in finding No. 3, supra, the Director of Price Stabilization issued CPR 83 (16 F.R. 10594). Said regulation became effective October 15, 1951, and was in effect to and including August 22, 1952. CPR 83 superseded SR 5.

5. The amount to be included under SR 5 for preparing and conditioning the car for delivery was the amount charged for said service during the period December 19, 1950, through January 25, 1951. The amount to be charged for preparing and conditioning a new automobile for delivery under CPR 83 was the amount charged for said service during the period January 25 through February 24, 1951.

Where during the base period a seller included in his sales price an amount for "preparing and conditioning" which was not directly related to actual services rendered in preparation for delivery such amount is not includable under said regulations.

6. During the aforementioned base periods, the defendant included in his records and books of account a sum of from $158 to $170 designated "Delivery and Handling." Of such amount, only the sum of $32.21 was a direct cost for preparing and conditioning a car for delivery. Allowing a markup of 40% of the selling price, or 66⅔% on costs, defendant's proper charge for preparing and conditioning a new car for delivery under the governing regulations was $53.68.

7. Proper allowance has been made in the Government's tabulations for all optional accessories and equipment requested by the customer in writing.

8. The tabulation of overcharges of $1,305.45 prepared by plaintiff herein, as indicated in the schedule attached to plaintiff's complaint, is a correct tabulation of the amount of said overcharges, and is hereby incorporated by reference.

9. The defendant did not act wilfully and did not fail to exercise practicable precautions in making these over-ceiling charges.

10. The complained of transactions transpired more than thirty days since the filing of this complaint and no suit for damages has been filed by the purchasers involved; these transactions did not arise because defendant acted upon and in accordance with the written advice and instructions of the President of the United States or an official or employee authorized to act for him; nor did such transactions arise out of the sale of material or service to any agency of the Government, pursuant to the lowest bid made in response to an invitation for competitive bids.

The Government is entitled to judgment for $1,305.45.

Counsel should submit a journal entry which conforms with this opinion within fifteen days.